UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-CIV-20786-BLOOM/Valle

ROBERT RUBENSTEIN and
RUBENSTEIN LAW, P.A.,

    Plaintiffs,

v.

THE FLORIDA BAR and ARLENE K. SANKEL,
in her official capacity as Chief Branch Discipline
Counsel of the Miami Branch of The Florida Bar,

    Defendants.

_____/

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter is before the Court upon the Motion for Summary Judgment, ECF No. [30] (the "Motion"), filed by Defendants The Florida Bar and Arlene K. Sankel ("Defendants" or the "Bar"). Plaintiffs Robert Rubenstein and Rubenstein Law, P.A. ("Plaintiffs" or "Rubenstein") timely responded. ECF No. [36] (the "Response"). The Court has reviewed the Motion, all supporting and opposing filings and submissions, and the record in the case. For the reasons that follow, Defendants' Motion for Summary Judgment is **DENIED**.

### I.    FACTUAL BACKGROUND

Through this action, Plaintiffs challenge, on First Amendment grounds, certain rules and guidelines concerning attorney advertising designed and implemented by the Bar and seek injunctive and declaratory relief.

In January 2013, the Florida Supreme Court adopted a completely revised set of attorney advertising rules as proposed by the Bar. *See In re Amendments to the Rules Regulating The*

*Florida Bar*, 108 So.3d 609 (Fla. 2013). The 2013 rule amendments resulted from extensive internal and public study and deliberation. In 2007, following the Bar's 2004 recommendation of only minor changes to its rules pertaining to attorney advertising, the Florida Supreme Court directed the Bar to "undertake an additional and contemporary study of lawyer advertising, which shall include public evaluation and comments about lawyer advertising." *In re Amendments to The Rules Regulating The Florida Bar – Advertising*, 971 So. 2d 763, 765 (Fla. 2007). The Bar presented its petition to comprehensively amend the rules in 2011. *See* ECF No. [29-3] ("2011 Petition"). The new rules for the first time permit attorney advertising to reference past results so long as statements regarding such results are "objectively verifiable." Rule 4-7.13, Rules Reg. Fla. Bar (2013) (the "Rules"). The Rules do not restrict past results statements based on the advertising medium.

Attorneys governed by the Rules are required to submit all non-exempt advertisements to the Bar for evaluation as to rule-compliance. Rule 4-7.19, Rules Reg. Fla. Bar (2013). An attorney may obtain an advisory opinion from the Bar concerning the compliance of a contemplated advertisement, but may also begin advertising prior to Bar review. *Id*. Advisory opinions "are advisory only and are not the basis for action by [the Bar's] grievance committees." Florida Bar Procedures for Issuing Advisory Opinions Relating to Lawyer Advertising or Solicitation § 1 (2002) ("Opinion Procedures"). The Bar must advise the attorney as to its evaluation of all filed advertisement by issuing a Notice of Compliance or Notice of Noncompliance. Rule 4-7.19. The Bar may subsequently change its finding of compliance, and must then provide notification of noncompliance. *Id*. A finding of compliance by the Bar is binding on the Bar in any subsequent grievance proceeding, such that a favorable opinion serves as a safe harbor, protecting the advertising attorney from discipline arising out of dissemination

of the subject advertisement. *Id*. By contrast, the Rules provide that "[a] lawyer will be subject to discipline as provided in these rules for . . . dissemination of a noncompliant advertisement in the absence of a finding of compliance by The Florida Bar," and where a Notice of Noncompliance is issued, require that the Bar "advise the lawyer that dissemination or continued dissemination of the advertisement may result in professional discipline." *Id*.

Evaluation of attorney advertising submissions are handled by the Bar's Ethics and Advertising Department. Notices and opinions issued by the Ethics and Advertising Department under Rule 4-7.19 may be appealed to the Bar's Standing Committee on Advertising, and from there to the Bar's Board of Governors. Opinion Procedures §§ 3(c), 5(a).

The Bar's Lawyer Regulation Department is responsible for the investigation and prosecution of ethics complaints and violations of the Rules, including those regulating attorney advertisement. The Ethics and Advertising Department has no separate authority to commence disciplinary investigations or proceedings. ECF No. [31-3] ("First Tarbett Decl.") ¶ 3. According to the Director of the Lawyer Regulation Department, the Department "does not investigate failure to abide by advertising guidelines or advisory opinions issued by the Ethics and Advertising Department of the Bar and does not initiate disciplinary proceedings based upon failure to follow guidelines or advisory opinions." ECF No. [31-7] ("Berry Decl.") ¶ 2.

Relying on the newly amended Rules, Plaintiffs developed, at great expense, a comprehensive advertising campaign featuring information regarding past recoveries for clients. Between May and October 2013, Plaintiffs submitted a series of television advertisements to the Bar for its evaluation. Tarbett Decl. ¶ 5. The Bar issued opinion letters in which it advised Plaintiffs that some advertisements were in compliance, some were not in compliance, and that some which were not in compliance could be brought into compliance with appropriate

3

disclaimers. *Id*. ¶ 5. Critically, the Bar's notice to Plaintiffs advised that its advertisements which included statements regarding past performance or results complied with the revised Rules, including the general rule against "false and misleading" attorney advertising. *See* ECF No. [31-4] at 7-9 ("May 2013 Letter").

In early 2014, the Bar's Board of Governors issued new "Guidelines for Advertising Past Results." ECF No. [29-3] Exh. 6 ("Guidelines"). The Guidelines were issued "to assist lawyers in complying with these requirements [the relevant Rules] when advertising past results." *Id*. The Guidelines provide that:

> The inclusion of past results in advertising carries a particularly high risk of being misleading. Such advertising will require the inclusion of more information than most types of advertising in order to comply with Rules 4-7.13(a)(2) and 4-7.14(a). Indoor and outdoor display and radio and television media do not lend themselves to effective communication of such information. Consequently, the Bar generally will not issue a notice of compliance for advertisements in such media that include references to past results.

*Id*. The Guidelines also contain specific restrictions and instructions regarding, for example, advertising dollar amounts and aggregating past results. *Id*.

Shortly following issuance of the Guidelines, the Bar notified Plaintiffs that it had withdrawn its prior approval of multiple advertisements. *See* ECF No. [31-1] ("Withdrawal Letter"). The Withdrawal Letter explained that "subsequent to the issuance to you [Plaintiffs] of the prior opinion, the Florida Bar Board of Governors issued guidelines on interpretation of Rule 4-7.13(b)(2) regarding past results." *Id*. at 1. The Bar then stated that:

> The Board of Governors has directed staff to withdraw the Florida Bar staff's advisory advertising opinion that was previously issued . . . only as to past results. The remainder of the prior Florida Bar staff advisory advertising opinion remains in effect. The Florida Bar staff advisory advertising opinion is that the advertisement(s) do not comply with the new past results guidelines adopted by The Florida Bar Board of Governors and therefore do not comply with Rule 4-7.13(b)(2) . . . .

*Id*. at 1.  The Withdrawal Letter further instructed that "[r]eferences to past results generally may not be advertised in indoor and outdoor display media (billboards and other signs) or in television and radio advertisements.  You may not include the reference to past results in the advertisement(s) as they appear in your submission in these media." Id. at 3.  It advised that "[u]se of an advertisement that does not comply with the lawyer advertising rules past the time period noted above [of thirty days] may result in disciplinary action," but explained that "[t]his letter does not constitute disciplinary action, nor does it mean that the bar has opened an investigation."  *Id*. at 4.

Plaintiffs did not undertake any appeals procedures regarding the Bar's withdrawal of its compliance opinion.  Rather, they initiated this action in March 2014.  Plaintiffs have continued to disseminate the subject advertisements.

In June 2014, the Bar notified Plaintiffs that they were alleged to have violated the Rules regarding attorney advertisement, and that the matter had been referred to Bar counsel "to initiate disciplinary proceedings."  ECF No. [29-3] Exh. 8 ("June 2014 Letter").  The Bar's June 2014 Letter specified the same advertisement language identified in the Withdrawal Letter, and paired it with violation of the Rules' regulation of statements regarding past results.  *Id*.  Less than an hour before filing the instant Motion, the Bar notified Plaintiffs via email that it had "closed" the "case file" in the pending disciplinary case against them.[1]

Sometime after both the adoption of the revised Rules and the Bar's issuance of the Guidelines – exactly when is not clear from the record – the Bar "engaged the services of Frank N. Magid Associates, Inc. to conduct a consumer research survey to determine whether attorney advertisements containing references to recoveries for clients in large dollar amounts are

---

[1] Plaintiffs state this fact several times in its Response; the Bar has not responded.  Those facts not controverted or opposed by the Bar are deemed admitted to the extent the Court finds them supported by evidence in the record.  *See* S.D. Fla. L. R. Civ. P. 56-1(b).

5

misleading to the average consumer and, if so, how effectively the misleading nature of the advertisements can be mitigated by the use of disclaimers." ECF No. [32-1] ("Second Tarbett Decl.") ¶ 3. The Bar has made a policy decision – again, it is unclear when – to decline to issue safe harbor opinions regarding past results involving dollar recoveries. *Id*. ¶ 4. In addition, the Bar's Lawyer Regulation Department has not itself "submitted a complaint to a Bar grievance committee because a lawyer advertised past results on a particular form of media, including television or billboards, or for advertising recoveries in gross rather than net amounts." Berry Decl. ¶ 5.

## II. PROCEDURAL POSTURE

In the instant Motion, the Bar challenges the Court's jurisdiction over this case on grounds of standing and ripeness, two related "strands of the justiciability doctrine . . . that go to the heart of the Article III case or controversy requirement." *Harrell v. The Florida Bar*, 608 F.3d 1241, 1247 (11th Cir. 2010). White the Bar has styled its Motion as one for summary judgment, justiciability is better understood as pertaining to the Court's subject matter jurisdiction. *See Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (holding that a court lacks subject matter jurisdiction to hear a case if the "case or controversy" requirements of Article III are not satisfied); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1293 (11th Cir. 2004) (contrasting statutory standing with "the subject-matter-jurisdictional doctrine of justiciability which considers injury, traceability to the defendant, and redressability") (citing *Northeastern Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993) (discussing standing justiciability as a jurisdictional issue)); *TranSouth Fin. Corp. of Florida v. Johnson*, 931 F.2d 1505, 1506 n.2, 1510 (11th Cir. 1991) (treating "case or controversy" justiciability issue as subject matter-jurisdictional); *Cox v. City of Dallas, Tex.*, 256 F.3d 281, 303 (5th Cir. 2001)

(holding that standing, as an issue of justiciability, "is a jurisdictional doctrine that . . . must be decided before the merits of a case"); *see also Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948 (5th Cir. 2011) ("[T]he concept of justiciability, as embodied in the political question doctrine, expresses the jurisdictional limitations imposed upon federal courts by the 'case or controversy' requirement of Article III.") (citations omitted).

Justiciability, like subject-matter jurisdiction "is more appropriately addressed in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1)." *See Aqua Log, Inc. v. Lost & Abandoned Pre-Cut Logs & Rafts of Logs*, 709 F.3d 1055, 1058 (11th Cir. 2013); *United States v. Blue Cross & Blue Shield of Alabama, Inc.*, 156 F.3d 1098, 1101 (11th Cir. 1998) (following district court in treating motion for summary judgment as motion to dismiss); *Nat'l Parks Conservation Ass'n v. U.S. Dep't of Interior*, 2014 WL 4724876, at *3 n.8 (M.D. Fla. Sept. 19, 2014) (considering ripeness challenge, explained that "subject matter jurisdiction is not a decision on the merits, and is resolved as a motion to dismiss, not summary judgment"). The Court will therefore consider the Bar's motion as one for dismissal under Rule 12(b)(1).

Because at issue in a 12(b)(1) motion "is the trial court's jurisdiction – its very power to hear the case – no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). The Court's evaluation of the Bar's Motion as one for dismissal and not summary judgment thus affects the sufficiency but not the scope of the evidence considered. *See Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 n.6 (11th Cir. 2001) ("[T]he district court properly went beyond the pleadings in order to determine whether it lacked subject matter jurisdiction, regardless of the label we put on the procedure."); *Bischoff v. Osceola Cnty., Fla.*,

222 F.3d 874, 878 (11th Cir. 2000) (stating that when a court evaluates a summary judgment motion asserting a lack of standing, facts set forth by the plaintiff will be "taken to be true" with "disputed facts [] construed in the light most favorable to plaintiff"); *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) ("where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits"); *Turcios v. Delicias Hispanas Corp.*, 275 Fed. App'x 879, 880 (11th Cir. 2008) (when considering factual attack on subject matter jurisdiction under Rule 12(b)(1) "the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56") (quoting *Morrison*, 323 F.3d at 925 and *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

Because standing and ripeness are jurisdictional inquiries, Plaintiffs, as the party invoking federal jurisdiction, bear the burden of establishing that that they have standing to sue and that this case is ripe for review. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements."); *Am. Civil Liberties Union of Florida, Inc. v. Dixie Cnty., Fla.*, 690 F.3d 1244, 1247 (11th Cir. 2012) ("Standing is a jurisdictional inquiry, and a party invoking federal jurisdiction bears the burden of establishing that he has standing to sue.").

### III. ANALYSIS

The Bar challenges the justiciability of Plaintiffs' First Amendment claim both as to standing and ripeness. The Court will address each issue in turn.

#### A.     Plaintiffs Have Standing to Sue

"Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressibility." *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) (citing *Lujan*, 504 U.S. at 560-61); *see also Kelly v. Harris*, 331 F.3d 817, 819-20 (11th

Cir. 2003) ("To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision."). Plaintiffs meet all three prongs required for Article III standing.

### 1. Plaintiffs Have Suffered an Injury In Fact

Under controlling case law, the injury-in-fact requirement is applied "most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced." *Harrell*, 608 F.3d at 1254 (citing *Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale*, 922 F.2d 756, 760 (11th Cir. 1991) ("The injury requirement is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where first amendment rights are involved, because of the fear that free speech will be chilled even before the law, regulation, or policy is enforced.")). Thus, the justiciability of a First Amendment claim does not require the plaintiff to already have been subjected to prosecution; rather, the plaintiff must show that "(1) he was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution." *ACLU v. The Florida Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993). A First Amendment plaintiff therefore "has standing if he demonstrates a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." *Jacobs v. The Florida Bar*, 50 F.3d 901, 904 (11th Cir. 1995) (quoting *Graham v. Butterworth*, 5 F.3d 496, 499 (11th Cir. 1993)). The "credible threat of prosecution" standard sets a "low threshold," requiring the plaintiff only to show that the "probability that the challenged provisions . . . will be enforced" is more than "chimerical", "imaginary or speculative." *Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d

809, 821 (5th Cir. 1979). As the Eleventh Circuit most recently explained, to show a credible threat of prosecution a plaintiff need only demonstrate "first, that he seriously wishes to engage in expression that is 'at least arguably forbidden by the pertinent law;' and second, that there is at least some minimal probability that the challenged rules will be enforced if violated." *Harrell*, 608 F.3d at 1254 (citing *Hallandale*, 922 F.2d at 762 and *Eaves*, 601 F.2d at 818 n. 6).

The Bar argues that Plaintiffs have not established a credible threat of prosecution. First, it notes, the Ethics and Advertising Department – the Bar's subdivision responsible for review of attorney advertisements and issuance of advertising opinions – has no disciplinary authority. That authority is housed in the Bar's Lawyer Regulation Department. Second, it maintains that the Withdrawal Letter did not itself threaten disciplinary action, but rather advised that non-compliance "with the lawyer advertising rules . . . *may* result in disciplinary action" and explicated that "[t]his letter does not constitute disciplinary action, nor does it mean that the bar has opened an investigation" (emphasis added). The Bar stresses that, in any event, non-compliance letters are inadmissible against an attorney in a disciplinary proceeding. Third, the Bar emphasizes that the Guidelines do not prohibit attorney advertising of past results or represent the Bar's authoritative position on whether such advertising would subject an attorney to discipline, but merely provides advice to lawyers seeking to comply with the Rules. A proper consideration of the facts here does not support the Bar's arguments.

The Guidelines in and of themselves substantiate a credible threat of prosecution against Plaintiffs for violation of the Rules. The Guidelines do state their purpose to assist lawyers in complying with the Rules regarding advertising past results. But they also represent the Bar's own interpretation of its Rules regarding attorney advertisement of past results. The Bar may have to convince itself that clear and convincing evidence of deceptive or misleading

information in an attorney's advertisement exists before commencing disciplinary proceedings in an individual case.  However, it is reasonable to expect the Bar to adhere to its own instruction in the Guidelines that billboard and television advertising which reference past results cannot, inherently, comply with the Rules.  In other words, the Guidelines establish that such speech is at least arguably forbidden.  Since Plaintiffs are engaging in such speech, they face a credible threat of prosecution in the form of disciplinary investigation and sanction.

The very actions taken by the Bar against Plaintiffs reify the Court's conclusion.  The Withdrawal Letter states that Plaintiffs' "advertisement(s) do not comply with the new past results guidelines adopted by The Florida Bar Board of Governors *and therefore* do not comply with Rule 4-7.13(b)(2)" (emphasis added).  The Bar thus interpreted the Rules *in accordance with the Guidelines* to determine that Plaintiffs speech was non-compliant.  In fact, the Withdrawal Letter stresses that its revised opinion as to Plaintiffs' advertisements results from the newly issued Guidelines.  The Bar's departmental structure – i.e., that the Withdrawal Letter was issued by a Bar attorney with the Ethics and Advertising Department – does not alter the injury in fact analysis.  The Guidelines were issued by the Bar's Board of Governors, which has exclusive authority to formulate and adopt matters of policy and is the reviewing and controlling entity for both the Ethics and Advertising and Lawyer Regulation Departments.  It is thus reasonable to conclude that the Bar's disciplinary arm will, like its Advertising Department, interpret the Rules in conformity with the Guidelines.

In fact, the Bar did exactly that in the June 2014 Letter.  There, the Bar notified Plaintiffs that they were alleged to have violated the Rules regarding attorney advertisement – specifying the same advertisement language identified in the Withdrawal Letter, and pairing that language with violation of the Rules regarding advertising past results.  The Letter stated that the matter

11

had been referred to Bar counsel "to initiate disciplinary proceedings." The June 2014 Letter concretely establishes that the Bar's Lawyer Regulation Department has applied, and in all likelihood will continue to apply, the Rules as interpreted by the Guidelines to prohibit attorney advertisement of past results as practiced by Plaintiffs, and engage in disciplinary action to enforce that prohibition. To understate, there is at least a minimal probability that the Rules will be enforced against Plaintiffs with respect to their past results advertisements.

Even if the Guidelines, standing alone, did not make credible Plaintiffs' threatened prosecution, the Withdrawal Letter and June disciplinary action both establish an injury in fact sufficient to provide Plaintiffs standing.

The Withdrawal Letter does disclaim that it alone "does not constitute disciplinary action [or] that the bar has opened an investigation." And it provides only that "[u]se of an advertisement that does not comply with the lawyer advertising rules . . . may result in disciplinary action." But the Letter itself instructed that Plaintiffs' advertisements do not comply with the Rules: "[T]he advertisement(s) do not comply with the new past results guidelines adopted by The Florida Bar Board of Governors and therefore do not comply with Rule 4-7.13(b)(2);" "You may not include the reference to past results in the advertisement(s) as they appear in your submission in these media." Both statements must be considered together. The Letter states that Plaintiffs' advertisements fail to comply with the Rules, and that non-compliance may result in disciplinary action. That instruction, standing alone, is sufficient to support a credible threat of enforcement.

Furthermore, the Rules themselves state that that "[a] lawyer will be subject to discipline as provided in these rules for . . . dissemination of a noncompliant advertisement in the absence of a finding of compliance by The Florida Bar." Rule 4-7.19(f)(2). On their face, the Rules

12

appear to mandate disciplinary action for use of advertisement not found by the Bar to be Rule-compliant. The Withdrawal Letter invalidated the Bar's previous finding of compliance as to Plaintiffs' advertisements, and further characterized them as noncompliant. It therefore created a credible threat of prosecution under Rule 4-7.19(f)(2).

At the very least, the Bar's actual initiation of enforcement proceedings in June 2014 establishes a reasonable basis for Plaintiffs to anticipate prosecution. As explained above, the June 2014 Letter indicated that Plaintiffs' use of past results in their television advertisements was prohibited by the same Rules, and for the same reasons, as directed in the Guidelines. In other words, actual disciplinary prosecution of Plaintiffs by the Bar was driven by enforcement of the Rules as interpreted by the Guidelines to prohibit advertisement of past results in indoor, outdoor and televised media. The Bar's last minute tactic to close the disciplinary case against Plaintiffs does not undermine Plaintiffs' standing. As the Eleventh Circuit explained, a sudden reversal of course by the Bar, in the midst of litigation and without supporting reasoning or change in policy, gives no assurance "that the challenged conduct has permanently ceased" and, on the contrary, "raise[s] a substantial possibility that the defendant has . . . changed course simply to deprive the court of jurisdiction." *Harrell*, 608 F.3d at 1267.

Plaintiffs have clearly demonstrated a very real threat of prosecution for engaging in their advertisement of past results.

### 2. Plaintiffs Have Established Causation and Redressability

The Bar has not raised the issue of causation for standing purposes, and only obliquely challenged the Court's ability to redress Plaintiffs' injury by a favorable decision. In any event, the facts here establish both causation and redressability.

13

In the context of standing, causation requires "a causal connection between the injury and conduct complained of," *Elend v. Basham*, 471 F.3d 1199, 1206 (11th Cir. 2006), and the injury must be "fairly traceable to the challenged action" and not the result of the "independent action of some third party not before the court." *Bischoff*, 222 F.3d at 883. Here, Plaintiffs' injury – enforcement of the Guidelines' reading of the Rules to prohibit their commercial speech and impose sanctions on Plaintiffs for noncompliance with the Rules – is directly caused by the Bar. The causation element is satisfied.

"Redressability is established when a favorable decision would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010) (citations omitted); *see also Utah v. Evans*, 536 U.S. 452, 464 (2002). The Bar has suggested that the ultimate relief sought by Plaintiffs – enjoining the Bar from enforcing the Guidelines – would serve no purpose because the Guidelines are not enforceable to begin with. Again, the Bar stresses that its advertising opinions are not self-activating and that the Guidelines are advisory and do not themselves establish rules permitting or prohibiting any attorney conduct. The Bar construes too narrowly both the Guidelines' function and the Court's power to redress Plaintiffs' complained-of injury. As the discussion above indicates, Plaintiffs' requested relief is best understood as an injunction preventing the Bar from enforcing the Rules regarding attorney advertisement *as articulated* in the Guidelines. Plaintiffs are justified in concluding that the Bar has and will enforce the Rules per the Guidelines to prohibit attorney advertising referencing past results in outdoor, indoor and television media, such as the advertisements disseminated by Plaintiffs. It is likely that if that expression of the Rules is held unconstitutional, Plaintiffs will be allowed to run many or not all of their advertisements at issue without risking disciplinary

action.  *See Harrell*, 608 F.3d at 1260 n.7 (rejecting requirement that attorney demonstrate compliance of proposed advertisements with all other relevant rules, held that attorney's claim was redressable because "it is likely that if the challenged rules are held unconstitutional, [attorney] will be allowed to run many or all of the advertising campaigns he has outlined in his affidavit").  Plaintiffs' injury may, therefore, be redressed by available judicial relief.

### B.      Plaintiffs' Case Is Ripe For Review

"Generally, 'a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Nat'l Parks Conservation*, 2014 WL 4724876 at *3 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).  "The ripeness doctrine protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997).  The ripeness inquiry, therefore, addresses the "timing of the suit." *Elend*, 471 F.3d at 1205 (explaining distinction between standing, which goes to identity of parties, and ripeness, which goes to timing).

"To determine whether a claim is ripe, [a court must] assess both the *fitness* of the issues for judicial decision and the *hardship* to the parties of withholding judicial review." *Harrell*, 608 F.3d at 1258 (emphasis in original) (citing *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta,* 219 F.3d 1301, 1315 (11th Cir. 2000)).  The fitness prong is typically concerned with "questions of finality, definiteness, and the extent to which resolution of the challenge depends upon facts that may not yet be sufficiently developed." *Mulhall*, 618 F.3d at 1291.  "The hardship prong asks about the costs to the complaining party of delaying review until conditions for deciding the controversy are ideal." *Harrell*, 608 F.3d at 1258.

As with standing, "the doctrine of ripeness is more loosely applied in the First Amendment context." *Cheffer v. Reno*, 55 F.3d 1517, 1523 n.12 (11th Cir. 1995); *see also Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227-28 (11th Cir. 2006) ("Because this case involves an alleged violation of the First Amendment, our review of this suit's ripeness is at its most permissive."); *Harrell*, 608 F.3d at 1258 ("[W]e apply the [ripeness] doctrine most permissively in the First Amendment context."); *Hallandale*, 922 F.3d at 762 n.5 ("The broader the First Amendment right and, therefore the more likely it is that a governmental act will impinge on the [F]irst [A]mendment, the more likely it is that the courts will find a justiciable case when confronted with a challenge to the governmental act.").

### 1. Plaintiffs' Claim Does Not Raise Fitness Concerns

In addressing the question of fitness for judicial review, a First Amendment plaintiff may be required to "seek determinations with varying degrees of finality from agencies whose rules or decisions they seek to challenge on an as-applied basis." *Harrell*, 608 F.3d at 1261-62; *see also Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) ("One of the basic rationales for the ripeness doctrine is to protect the administrative agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.") (citations omitted); *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 590 (11th Cir. 1997) ("Without the presentation of a binding conclusive administrative decision, no tangible controversy exists and, thus, we have no authority to act."). This requirement "is not a form of administrative exhaustion, but rather a requirement that 'an administrative action must be final before it is judicially reviewable.'" *Harrell*, 608 F.3d at 1262 (quoting *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1574 n. 8 (11th Cir. 1989)).

The Eleventh Circuit has "recognized an exception to this requirement in cases where there is nothing to be gained from an agency's interpretation of a rule because the rule's application is clear on its face." *Harrell*, 608 F.3d at 1262; *see also Pittman v. Cole*, 267 F.3d 1269, 1278-79 (11th Cir. 2001) (holding that plaintiffs' claims were not fit for adjudication where the agency's complained-of policy was articulated only by the informal opinion of its general counsel and not by any official position, raising fundamental factual questions regarding the agency's actual position). Thus, in *Jacobs*, the Eleventh Circuit rejected a ripeness challenge to an attorney's First Amendment claim against the Florida Bar because application of the complained of rule – a blanket prohibition – was certain. *See Jacobs*, 50 F.3d 906 n.18. By contrast, in *Harrell*, the court determined that because the attorney did not avail himself of the Florida Bar's administrative procedures, his claims as to the enforcement of several rules raised serious fitness concerns which rendered those claims nonjusticiable. *See Harrell*, 608 F.3d at 1262-64.

Here, the Bar's position with respect to the Rules on attorney advertisement of past results and to Plaintiffs' commercial speech in question is sufficiently clear, eliminating any fitness concerns.[2] Plaintiffs admittedly did not pursue the Bar's internal appellate process after receiving the Withdrawal Letter. And, the Bar discontinued its disciplinary investigation and proceedings with respect to Plaintiffs without generating a "final" disciplinary decision. But the

---

[2] The Court need not determine at this time whether Plaintiffs have presented a facial or an as-applied challenge to the Guidelines and the Rules. Plaintiffs and the Bar both discuss the claim as an as-applied challenge. However, the Court is "not bound by [Plaintiffs'] designation of [their] claims, and we look to the complaint to determine what claims, if any, [their] allegations support." *Harrell*, 608 F.3d at 1259 (citing *Jacobs*, 50 F.3d at 905 n.17). Construing Plaintiffs' claim as a facial challenge to the Guidelines on First Amendment grounds does not implicate any ripeness concerns: a facial challenge cannot depend on whether Plaintiffs have elicited from the Bar its definitive interpretation of the Rules or how the Bar has enforced the Rules against Plaintiffs. By contrast, in as much as Plaintiffs "argue[] through [their] First Amendment claim that the rules affirmatively prohibit certain conduct . . . it is very important to know whether the rules really do prohibit the desired conduct. Thus, this type of as-applied challenge is most likely to be ripe if the rules clearly apply on their face, or if the enforcing authority – here, the Bar – has told us that they apply." *Harrell*, 608 F.3d at 1264 n.8. As discussed, *infra,* Plaintiffs' claim is fit for review as an an-applied challenge for those very reasons.

straightforward language in the Guidelines as to attorney advertisement of past results, coupled with the Bar's enforcement of the Rules against Plaintiffs in direct accordance with the Guidelines, renders the Bar's interpretation and implementation of the Rules abundantly clear. That is, because the Bar interprets the Rules in accordance with the Guidelines, the Rules are clear on their face; and the Bar has spoken to the issue by actually enforcing the Rules, pursuant to the Guidelines, against Plaintiffs. Unlike the circumstances in *Pittman*, the Guidelines are not merely advisory – they fairly represent the Bar's official interpretation of the Rules. That the Bar has interpreted the Rules in line with the Guidelines to withdraw its compliance opinion from Plaintiffs' advertisements and initiate disciplinary proceedings against Plaintiffs reinforces that determination. In *Harrell*, the attorney had not received *any* communication or instruction from the bar regarding its application of the rules in question. Here, in contrast, Plaintiffs received both the Withdrawal Letter and the June 2014 Letter – both of which clearly demonstrate the Bar's position that it interprets the Rules as articulated in the Guidelines.

The fact that the Bar has recently commissioned a study on whether advertisements containing certain past results information (specifically, dollar amounts recovered) misleads consumers does not alter the fitness of Plaintiffs' claims for judicial review. Nor does the Bar's declaration that its Lawyer Regulation Department has not (since adoption of the new Rules) itself submitted an attorney grievance complaint targeting the use of past performance in advertising. The Bar has not rescinded the Guidelines. It has not expressed an official shift in policy away from the Guidelines. The Bar's reading of the Rules are clear from the face of the Guidelines and from how that interpretation has been put into practice against Plaintiffs, as evidenced by the Withdrawal Letter and June 2014 Letter. The Bar's insistence that its Lawyer Regulation Department has not submitted a complaint regarding attorneys advertising past

results is misleading and belied by the very disciplinary actions taken by the Bar against Plaintiffs here. The Bar initiated disciplinary proceedings against Plaintiffs in June 2014 for violating the Rules regarding advertising past results on the basis of an anonymous complaint by "concerned bar members." *See* June 2014 Letter at 7. Submission of a complaint by the Lawyer Regulation Department was and is not necessary. The Bar undertook to enforce the Rules – against Plaintiffs themselves – as interpreted by the Guidelines.

The Rules as issue, and the Bar's interpretation and enforcement of them, are sufficiently clear. Nothing will be gained from forcing Plaintiffs to submit to the Bar's appeals process and to subject themselves to continued or renewed disciplinary action. Plaintiffs claim is ripe for adjudication.

### 2. Hardship Is Not A Factor Here

"[I]f a dispute otherwise qualifies as fit for review, any lack of hardship is irrelevant." *Eternal Word Television Network, Inc. v. Sebelius*, 935 F. Supp. 2d 1196, 1224 (N.D. Ala. 2013); *see also Harrell*, 608 F.3d at 1259 ("[T]he 'hardship' prong is not an independent requirement divorced from the consideration of the institutional interests of the court and agency.") (citations omitted); *Mulhall*, 618 F.3d at 1293 ("[W]here there are no significant agency or judicial interests militating in favor of delay, lack of 'hardship' cannot tip the balance against judicial review.") (citations omitted). Because there are no fitness issues, or agency or judicial interests, mitigating in favor of delaying consideration of Plaintiffs' claim, the Court need not consider the hardship to the parties in withholding judicial review.

Plaintiffs do note the difficult position in which they would be placed should the Court decline to consider their claim at this time. First, they assert that they would be forced to withdraw their advertisements, at significant cost. Second, they explain that were they to appeal

the Withdrawal Letter or wait for the Bar to reinitiate an enforcement action against them, the Bar would likely argue that the federal courts must abstain from considering their First Amendment claim in favor of the ongoing state process. *See* ECF No. [38] (Pls. Reply to Defs. Mtn. for Summ. J.) at 5 (citing *Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 436-37 (1982)). Both of these represent the type of practical hardship that is relevant to the ripeness inquiry. *See Harrell*, 608 F.3d at 1264 n. 10 (noting that the time and expense of appealing a bar decision and creating new advertisement could constitute hardship); *Pittman*, 267 F.3d at 1281 (considering "hardship in the 'practical' sense or hardship resulting from being forced to modify behavior").

## IV.  CONCLUSION

For the foregoing reasons, the Court rejects the Bar's standing and ripeness challenges to Plaintiffs' First Amendment claim. Plaintiffs' claim is justiciable, and the Court will consider Plaintiffs' pending motion for summary judgment in due course.

Accordingly, it is hereby **ORDERED and ADJUDGED** that the Bar's Motion for Summary Judgment, ECF No. [30], is **DENIED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 20th day of November, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record