UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-CIV-20786-BLOOM/Valle

ROBERT RUBENSTEIN and
RUBENSTEIN LAW, P.A.,

      Plaintiffs,

v.

THE FLORIDA BAR and ARLENE K. SANKEL,
in her official capacity as Chief Branch Discipline
Counsel of the Miami Branch of The Florida Bar,

      Defendants.

_____/

**MEMORANDUM OPINION AND ORDER
ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court upon the Motion for Summary Judgment, ECF No. [28] (the "Motion"), filed by Plaintiffs Robert Rubenstein and Rubenstein Law, P.A. ("Plaintiffs" or "Rubenstein"). Defendants The Florida Bar and Arlene K. Sankel ("Defendants" or the "Bar") timely responded, ECF No. [36] (the "Response"), and Plaintiffs timely replied, ECF No. [38]. The Court has reviewed the Motion, all supporting and opposing filings and submissions, and the record in the case. For the reasons that follow, Plaintiffs' Motion for Summary Judgment is **GRANTED**.

## I.    FACTUAL BACKGROUND

Through this action, Plaintiffs challenge on First Amendment grounds, certain rules and guidelines concerning attorney advertising designed and implemented by the Bar. As a result, Plaintiffs seek injunctive and declaratory relief.

The rules regulating attorney advertising in Florida have long prohibited or restricted reference to past results. *See Harrell v. The Florida Bar*, 608 F.3d 1241, 1248 (11th Cir. 2010).

In 1997, a Task Force convened by the Bar recommended a complete ban on references to past successes or results in attorney advertising in indoor or outdoor display, television and radio media.  The Task Force stated that

> References to past successes or results carry the inherent risk of misleading a potential client for a number of reasons.  First, circumstances which appear similar to the untrained eye are often very dissimilar in the eyes of the law.  A lay person might be misled into believing that the results obtained in the advertised cases indicate that the same results would be obtained in his or her case.  Second, past results are not valid indicators of an attorney's competence or fitness to handle a particular matter.  Third, a lay person is not in a position to judge the significance of a particular result.  What appears to be a success might, in fact, be a poor result and vice versa.  Furthermore, even a highly successful or unsuccessful result may not reflect upon the ability or performance of the attorney handling the matter.  Only a person with legal training and experience in the particular field and a knowledge of all the facts would be in a position to accurately judge how a particular result reflects upon the lawyer.

ECF No. [29-2] Exh. 1, The Florida Bar Joint Presidential Advertising Task Force, *Final Report & Recommendations* (May 1997) ("1997 Task Force Report") at 13-14.  Most "computer-accessed communications," such as attorney or law-firm websites and unsolicited email communications, were separately regulated and did not contain the blanket ban on the use of past results.  1997 Task Force Report at 24-25, 27.  The Task Force's findings were based on a multi-part study, which included surveys, focus groups and data analysis, but the Report did not link its position and recommendations regarding past results advertising to any specific data or findings. *See* ECF No. [29-2] Exhs. 2, 3 (1997 Task Force Survey Results and Executive Summary).  In 1999, the Supreme Court of Florida adopted the proposed rules.  *See Amendments to Rules Regulating the Florida Bar-Advertising Rules*, 762 So. 2d 392 (Fla. 1999).

In 2004, the Bar recommended only minor changes to its rules pertaining to attorney advertising. Thereafter, in 2007, the Supreme Court of Florida directed the Bar to "undertake an additional and contemporary study of lawyer advertising, which shall include public evaluation and comments about lawyer advertising." *In re Amendments to the Rules Regulating The*

*Florida Bar – Advertising*, 971 So. 2d 763, 765 (Fla. 2007).  The Bar presented its petition to comprehensively amend the rules in 2011.  *See* ECF No. [29-3] Exh. 5, Petition to Amend the Rules Regulating The Florida Bar – Subchapter 4-7, Lawyer Advertising Rules (Jul. 5, 2011) ("2011 Petition").

In January 2013, the Supreme Court of Florida adopted a completely revised set of attorney advertising rules as proposed by the Bar.  *See In re Amendments to the Rules Regulating The Florida Bar*, 108 So. 3d 609 (Fla. 2013).  The new rules for the first time permitted attorney advertising to reference past results so long as statements regarding such results were "objectively verifiable."  Rule 4-7.13, Rules Reg. Fla. Bar (2013) (the "Rules").  The Rule in question provides, in relevant part,

> A lawyer may not engage in deceptive or inherently misleading advertising. . . .
> Deceptive or inherently misleading advertisements include . . . references to past
> results unless such information is objectively verifiable . . . .

Rule 4-7.13(b)(2).[1]  The Rules do not restrict past results statements based on the advertising medium.

The 2011 Petition and the 2013 rule amendments resulted from internal and public study, comment and deliberation.  *See generally* 2011 Petition.  The Bar concluded that the new rules were "necessary to encourage the free flow of information to the public that is necessary for the selection of a lawyer."  *Id*. at 8.  The Bar stated that its "primary goals" in regulating attorney advertising were:

> Protection of the public from false, misleading, or deceptive information by
> lawyers for the purpose of obtaining representation of prospective clients;

---

[1] References to past results are also subject to Rule 4-7.14, which prohibits "engag[ing] in potentially misleading advertising" such as "advertisements that are subject to varying reasonable interpretations . . . which would be materially misleading when considered in the relevant context" and "advertisements that are literally accurate, but could reasonably mislead a prospective client regarding a material fact."  Rule 4-7.14(a)(1)-(2).

Promotion of advertising that provides information that will assist a prospective client in making an informed and meaningful decision about the prospective client's need for legal services and about which lawyer can best fulfill those needs (protecting public access to knowledge about reasonably priced quality legal services);

Protection of the public from advertising that contributes to disrespect for the judicial system, including disrespect for the judiciary;

Protection of the public from advertising that causes the public to have an inaccurate view of the legal system, of lawyers in general, or of the legal profession in general;

Enforcement that will not have an unreasonable economic impact on lawyers who provide information about legal services by methods that do not require expenditure of significant funds as compared to those who provide information about legal services by more expensive means; and

Provision of clear and simple guidelines and, to the greatest extent practicable, establishment of "bright line" standards, violation of which will likely be clear so that violation will justify the conclusion that violation was either intentional or the result of gross incompetence, thereby allowing imposition of a harsh penalty.

*Id*. at 9-10.  Justifying the new rules permitting the use of past results in advertising, the Bar highlighted that "The U.S. Supreme Court has generally struck down regulations restricting advertising truthful information;" that "[o]f those responding to the survey on public perception of lawyer advertising, 74% indicate that past results are an important attribute in choosing a lawyer[; i]t is clear that the public wants this information available to them;" and that "[m]ost of those Florida Bar members who provided written and oral comments also noted that the lawyer advertising rules should not prohibit truthful statements regarding past results."  *Id*. at 13-14. The Bar further explained that "there is no reason why any communications seeking legal employment should be treated differently based upon the medium of the advertising or whether the person requested the information."  *Id*. at 13.

Attorneys governed by the Rules are required to submit all non-exempt advertisements to the Bar for evaluation as to rule-compliance.  Rule 4-7.19, Rules Reg. Fla. Bar (2013).  An

attorney may obtain an advisory opinion from the Bar concerning the compliance of a contemplated advertisement, but may also begin advertising prior to Bar review. *Id*. Advisory opinions "are advisory only and are not the basis for action by [the Bar's] grievance committees." Florida Bar Procedures for Issuing Advisory Opinions Relating to Lawyer Advertising or Solicitation § 1 (2002) ("Opinion Procedures"). The Bar must advise the attorney as to its evaluation of all filed advertisement by issuing a Notice of Compliance or Notice of Noncompliance. Rule 4-7.19. The Bar may subsequently change its finding of compliance and must then provide Notification of Noncompliance. *Id*. A finding of compliance by the Bar is binding on the Bar in any subsequent grievance proceeding, such that a favorable opinion serves as a safe harbor, protecting the advertising attorney from discipline arising out of dissemination of the subject advertisement. *Id*. By contrast, the Rules provide that "[a] lawyer will be subject to discipline as provided in these rules for . . . dissemination of a noncompliant advertisement in the absence of a finding of compliance by The Florida Bar." *Id*. The Rules further provide that where a Notice of Noncompliance is issued, the Bar is required to "advise the lawyer that dissemination or continued dissemination of the advertisement may result in professional discipline." *Id*.

Evaluation of attorney advertising submissions are handled by the Bar's Ethics and Advertising Department. Notices and opinions issued by the Ethics and Advertising Department under Rule 4-7.19 may be appealed to the Bar's Standing Committee on Advertising, and from there to the Bar's Board of Governors. Opinion Procedures §§ 3(c), 5(a).

The Bar's Lawyer Regulation Department is responsible for the investigation and prosecution of ethics complaints and violations of the Rules, including those regulating attorney advertisement. The Ethics and Advertising Department has no separate authority to commence

disciplinary investigations or proceedings.   ECF No. [31-3] ("First Tarbert Decl.") ¶ 3. According to the Director of the Lawyer Regulation Department, the Department "does not investigate failure to abide by advertising guidelines or advisory opinions issued by the Ethics and Advertising Department of the Bar and does not initiate disciplinary proceedings based upon failure to follow guidelines or advisory opinions."  ECF No. [31-7] ("Berry Decl.") ¶ 2.

Relying on the newly amended Rules, Plaintiffs developed, at great expense, an advertising campaign featuring information regarding past recoveries for clients.  Between May and October 2013, Plaintiffs submitted a series of television advertisements to the Bar for its evaluation.  ECF No. [31-3] ("First Tarbert Decl.") ¶ 5.  The Bar issued opinion letters in which it advised Plaintiffs that some advertisements were in compliance, some were not in compliance, and that some which were not in compliance could be brought into compliance with appropriate disclaimers.  *Id*. ¶ 5.  Plaintiffs' advertisements include, for example, a television segment animated with a cartoon car accident, a courthouse and dollar signs drawn on a dry-erase board; using an attorney voice over; and depicting the words "COLLECTED OVER $50 MILLION FOR THEIR CLIENTS IN JUST THE LAST YEAR!  Gross proceeds.  Results in individual cases are based on the unique facts of each case."  *See* ECF No. [31-4] at 7-9 ("May 2013 Letter").  Critically, the Bar's notice to Plaintiffs advised that its advertisements which included statements regarding past performance or results complied with the revised Rules, including the general rule against "false and misleading" attorney advertising.  *Id*.

In early 2014, the Bar's Board of Governors issued new "Guidelines for Advertising Past Results."  ECF No. [29-3] Exh. 6 ("Guidelines").  The Guidelines were issued "to assist lawyers in complying with these requirements [the relevant Rules] when advertising past results."  *Id*. The Guidelines provide that:

6

> The inclusion of past results in advertising carries a particularly high risk of being misleading.  Such advertising will require the inclusion of more information than most types of advertising in order to comply with Rules 4-7.13(a)(2) and 4-7.14(a).  Indoor and outdoor display and radio and television media do not lend themselves to effective communication of such information.  Consequently, the Bar generally will not issue a notice of compliance for advertisements in such media that include references to past results.

*Id*.  The Guidelines also contain specific restrictions and instructions regarding, for example, advertising dollar amounts and aggregating past results.  *Id*.

The American Bar Association's Model Rules of Professional Conduct impose no blanket restrictions specific to references to past results.  ABA Model Rules of Prof'l Conduct R. 7.1.  The vast majority of states follow the ABA's approach, but six states have added the requirement that the reference to past results be accompanied by a disclaimer.  *See* Mo. Rules of Prof'l Conduct R. 4-7.1(c); N.M. Rules of Prof'l Conduct R. 16-701(A)(4); N.Y. Code of Prof'l Resp. DR 2-101(e); S.D. Rules of Prof'l Conduct R. 7.1(c)(4); Tex. Disciplinary Rules of Prof'l Conduct R. 7.02(a)(2); Va. Rules of Prof'l Conduct R. 7.2(a)(3).  Plaintiffs state, and the Bar does not dispute, that no state imposes a prohibition on past results entirely in any specific form of media.

Shortly following issuance of the Guidelines, the Bar notified Plaintiffs that it had withdrawn its prior approval of multiple advertisements.  *See* ECF No. [29-3] Exh. 7 ("Withdrawal Letter").  The Withdrawal Letter explained that "subsequent to the issuance to you [Plaintiffs] of the prior opinion, the Florida Bar Board of Governors issued guidelines on interpretation of Rule 4-7.13(b)(2) regarding past results."  *Id*. at 1.  The Bar then stated that:

> The Board of Governors has directed staff to withdraw the Florida Bar staff's advisory advertising opinion that was previously issued . . . only as to past results. The remainder of the prior Florida Bar staff advisory advertising opinion remains in effect.  The Florida Bar staff advisory advertising opinion is that the advertisement(s) do not comply with the new past results guidelines adopted by The Florida Bar Board of Governors and therefore do not comply with Rule 4-7.13(b)(2) . . . .

*Id.* at 1. The Withdrawal Letter further instructed that "[r]eferences to past results generally may not be advertised in indoor and outdoor display media (billboards and other signs) or in television and radio advertisements. You may not include the reference to past results in the advertisement(s) as they appear in your submission in these media." Id. at 3. It advised that "[u]se of an advertisement that does not comply with the lawyer advertising rules past the time period noted above [of thirty days] may result in disciplinary action," but explained that "[t]his letter does not constitute disciplinary action, nor does it mean that the bar has opened an investigation." *Id.* at 4.

Plaintiffs initiated this action in March 2014. Plaintiffs have continued to disseminate the subject advertisements.

In June 2014, the Bar notified Plaintiffs that "[i]t appears you[] ha[ve] failed to comply with the Rules of Professional Conduct with respect to your advertising" and that the matter had been referred to Bar counsel "to initiate disciplinary proceedings." ECF No. [29-3] Exh. 8 ("June 2014 Letter") at 1. The Bar's June 2014 Letter specified the same advertisement language identified in the Withdrawal Letter, and paired it with violation of the Rules' regulation of statements regarding past results.[2] *Id.* at 1-2. Less than an hour before filing its own motion for summary judgment in this case, the Bar notified Plaintiffs via email that it had "closed" the "case file" in the pending disciplinary case against them.[3]

---

[2] The Bar also notified Plaintiffs that their advertisements violated Rule 4-7.14 as well by "stat[ing] that [Plaintiffs] obtained [a] specific recovery for a client while omitting facts necessary to avoid misleading consumers." June 2014 Letter at 2. The Bar maintains that the dollar amounts in Plaintiffs' advertisements represented gross recoveries "and did not reflect the amount actually received by the client," up to one-third less than the advertised amount. ECF No. [31] (Def. Stat. Facts Supp. Defs. Mtn. Summ. J.) ¶ 2. However, Plaintiffs have not challenged this application of the Rules to their advertisements. *See infra.*

[3] Plaintiffs state this fact several times in its Response; the Bar has not responded. Those facts not controverted or opposed by the Bar are deemed admitted to the extent the Court finds them supported by evidence in the record. *See* S.D. Fla. L. R. Civ. P. 56-1(b).

Sometime after both the adoption of the revised Rules and the Bar's issuance of the Guidelines – exactly when is not clear from the record – the Bar "bec[a]me concerned that advertisements . . . that contained statements that lawyers or law firms had gotten clients recoveries in large dollar amounts . . . might be misleading to the average consumer."  ECF No. [32-1] ("Second Tarbert Decl.") ¶¶ 3-4.[4]  The Bar subsequently "engaged the services of Frank N. Magid Associates, Inc. to conduct a consumer research survey to determine whether attorney advertisements containing references to recoveries for clients in large dollar amounts are misleading to the average consumer and, if so, how effectively the misleading nature of the advertisements can be mitigated by the use of disclaimers."  *Id.* ¶ 4.  The Bar represents that the consumer research "is currently in progress."  Resp. at 3.  The Bar has made a policy decision – again, it is unclear when – to decline to issue safe harbor opinions regarding past results involving dollar recoveries.  Second Tarbert Decl. ¶ 5.

## II.   PROCEDURAL BACKGROUND

In its cross-motion for summary judgment, the Bar challenged the justiciability of Plaintiffs' First Amendment claim.  ECF No. [30].  Choosing also in its Response to the instant Motion to focus on its justiciability arguments, the Bar dedicated only a few paragraphs (of its five and half page brief) to the substance of the First Amendment issues.  This Court rejected the Bar's standing and ripeness challenges to Plaintiffs' First Amendment claim, and determined that Plaintiffs' claim is justiciable.  ECF No. [43], *Rubenstein v. Florida Bar*, 2014 WL 6610972 (S.D. Fla. Nov. 20, 2014).

---

[4] The Second Tarbert Declaration is mis-numbered, repeating paragraph "3."  The Court refers here to the second paragraph 3 as paragraph 4, paragraph 4 as paragraph 5, etc.

### III.   STANDARD ON SUMMARY JUDGMENT

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations.  Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor.").

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir. 1993)).  To preclude summary judgment, the factual issue or dispute must be genuine – the evidence must be of such a quality that "a reasonable jury could return a verdict for the nonmoving party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 248.  "Only those doubts about

facts that are reasonable must be resolved in favor of the non-movant." *Worthy v. Widnall*, 900 F. Supp. 475, 480 (M.D. Ga. 1995) (citing *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995)). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation omitted).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Chanel, Inc. v. Italian Activewear, Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991) ("Once a moving party has sufficiently supported its motion for summary judgment, the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact."). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *Shiver*, 549 F.3d at 1343.

Statements of fact submitted by the parties (as required by Local Rule in this District) must be supported by specific evidence in the record, such as depositions, answers to interrogatories, admissions, and affidavits on file with the Court. *See* S.D. Fla. L. R. 56.1. A party cannot manufacture a genuine issue of fact by misconstruing or misstating the clear factual record before the Court. *See Broadcast Music, Inc. v. Evies Tavern Ellenton, Inc.*, --- F.3d ---, 2014 WL 6602418, at *3 (11th Cir. Nov. 21, 2014) (factual record contradicted assertion of fact

by party and could not preclude summary judgment); *Reese v. Herbert*, 527 F.3d 1253, 1268-69 (11th Cir. 2008) (A statement of fact "is not itself a vehicle for making factual assertions that are otherwise unsupported in the record . . . [rather,] the district court must [] review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact.") (citations omitted).  A party's affidavit or declaration will not be credited where "blatantly contradicted by other evidence in the record."  *Reid v. Sec'y, Fla. Dept of Corr.*, 486 F. App'x 848, 851 (11th Cir. 2012).

Even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence on the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## IV.   ANALYSIS

### A.    First Amendment Protection for Lawyer Advertising as Commercial Speech

The United States Supreme Court first recognized that protections afforded by the First Amendment to the United States Constitution apply to commercial speech in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976).  *See also Mason v. Fla. Bar*, 208 F.3d 952, 955 (11th Cir. 2000) ("Commercial speech, expression inextricably related to the economic interests of the speaker and audience, is undeniably entitled to substantial protection under the First and Fourteenth Amendments of the United States Constitution.").  It later elaborated that this type of speech merits only "a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial

expression." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995) (quoting *Ohralik v. Ohio State Bar Assoc.*, 436 U.S. 447, 456 (1978)).  The Supreme Court specifically applied First Amendment protections to attorney advertising in *Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977), holding that advertising by attorneys may be regulated, but "may not be subjected to blanket suppression." *Bates,* 433 U.S. at 383. The Court further noted that "[i]t is now well established that lawyer advertising is commercial speech and, as such, is accorded a measure of First Amendment protection." *Went For It*, 515 U.S. at 623.

The Supreme Court's  "decisions involving commercial speech have been grounded in the faith that the free flow of commercial information is valuable enough to justify imposing on would-be regulators the costs of distinguishing the truthful from the false, the helpful from the misleading, and the harmless from the harmful." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 646 (1985).  Regulations which seek to restrict advertising often "assumes that the public is not sophisticated enough to realize the limitations of advertising, and that the public is better kept in ignorance than trusted with correct but incomplete information." *Bates*, 433 U.S. at 374-75.  The Supreme Court has eschewed "as dubious any justification that is based on the benefits of public ignorance." *Id*.  "[P]eople will perceive their own best interests if only they are well enough informed, and . . . the best means to that end is to open the channels of communication rather than to close them.  *Va. Bd. of Pharmacy*, 425 U.S. at 770.  Moreover, the Supreme Court has stressed that "insofar as [lawyer] advertising tend[s] to acquaint persons with their legal rights who might otherwise be shut off from effective access to the legal system, it [is] undoubtedly more valuable than many other forms of advertising." *Zauderer*, 471 U.S. at 646.

Plaintiffs' advertisements are clearly a form of commercial speech whose regulation by the Bar is subject to a First Amendment analysis.

### B.   Nature of Plaintiff's First Amendment Challenge and the Parties' Relative Burdens

The Court must determine whether Plaintiffs present a facial or an as-applied challenge to the Guidelines and the Rules.  *See*, *e.g.*, *Abramson v. Gonzalez*, 949 F.2d 1567, 1572 (11th Cir. 1992) (considering nature and propriety of challenge as facial or as-applied before review of the merits).

"A facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a statute or regulation itself."  *United States v. Frandsen*, 212 F.3d 1231, 1235 (11th Cir. 2000).  *See Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 129 (1992) ("[I]n the area of freedom of expression an overbroad regulation may be subject to facial review and invalidation, even though its application in the case under consideration may be constitutionally unobjectionable.").   Under the standard articulated by the Supreme Court in *United States v. Salerno*, 481 U.S. 739 (1987), a plaintiff mounting a facial challenge "must establish that no set of circumstances exists under which the [statute or regulation] would be valid."  *Id*. at 745; *see GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1255 & n.19 (11th Cir. 2012) (reiterating that *Salerno*'s "no set of circumstances" test is the proper standard for evaluating a facial challenge).   That is, "when a plaintiff attacks a law facially, the plaintiff bears the burden of proving that the law could never be constitutionally applied."  *Jacobs v. The Fla. Bar*, 50 F.3d 901, 906 n.20 (11th Cir. 1995) (citing *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 11 (1988) ("to prevail on a facial attack the plaintiff must demonstrate that the challenged law . . . could never be applied in a valid manner")).

By contrast, where "plaintiffs seek to vindicate their own rights, the challenge is as-applied." *Jacobs*, 50 F.3d 906; *see also Ross v. Duggan*, 402 F.3d 575, 583 (6th Cir. 2004) ("In an as-applied challenge, the plaintiff contends that application of the statute in the particular context in which he has acted, or in which he proposes to act, would be unconstitutional. Therefore, the constitutional inquiry in an as-applied challenge is limited to the plaintiff's particular situation.") (citation omitted); *Legal Aid Servs. of Oregon v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010) ("An as-applied First Amendment challenge contends that a given statute or regulation is unconstitutional as it has been applied to a litigant's particular speech activity."). When evaluating an as-applied challenge, the court's inquiry and potential relief focuses only on the particular challenged application, and "the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993) (quoting *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71 n.20 (1983)). The Supreme Court has characterized that burden as a "heavy" one. *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516 (1996).

The Eleventh Circuit has confirmed that the target of a plaintiff's claim and the nature of the relief sought is paramount, not the facial versus as-applied label. *See Am. Fed'n of State, Cnty. & Mun. Employees Council 79 v. Scott*, 717 F.3d 851, 863-64 (11th Cir. 2013). Characterizing a challenge as either facial or as-applied may be problematic. *See id.* (explaining that "the line between facial and as-applied relief is a fluid one, and many constitutional challenges may occupy an intermediate position on the spectrum between purely as-applied relief and complete facial invalidation"). For example, a claim may have characteristics of both a facial and an as-applied challenge: on the one hand "'as applied' in the sense that it does not seek to strike the [statute or regulation] in all its applications, but only to the extent it covers" the

15

specific issue at hand; and on the other "'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all" examples of such application. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010).  When a plaintiff brings this sort of "quasi-facial" challenge – where a plaintiff seeks "relief that reaches beyond the plaintiffs in a case" – the court's analysis and issuance of relief "must satisfy the . . . standards for a facial challenge to the extent of that reach."  *Scott*, 717 F.3d at 863.

Here, Plaintiffs and the Bar both discuss Plaintiffs' First Amendment claim as an as-applied challenge.  However, the Court is "not bound by [Plaintiffs'] designation of [their] claims, and [must] look to the complaint to determine what claims, if any, [their] allegations support."  *Harrell v. The Fla. Bar*, 608 F.3d 1241, 1259 (11th Cir. 2010) (citing *Jacobs*, 50 F.3d at 905 n.17).  Plaintiffs' challenge to the Guidelines and Rules is quasi-facial.  Plaintiffs attack the Bar's application of the Guidelines to their particular advertisements and aim to vindicate their specific rights.  Their challenge is in that sense as-applied, and the Bar thus carries the burden of justifying the restrictions the Guidelines and Rules impose upon Plaintiffs' commercial speech.  At the same time, Plaintiffs seek injunctive relief "[d]eclar[ing] unconstitutional and enjoin[ing] enforcement of the [Guidelines] prohibiting television and radio advertising of past results."  ECF No. [1] (Complaint) at 8; Mtn. at 26.  Therefore, in evaluating the relief Plaintiffs request, the Court will consider whether it meets *Salerno*'s "demanding" no-set-of-circumstances standard.  *See Scott*, 717 F.3d at 865-66 (applying *Salerno* in relief context).

**C.   Standard of Review for Regulation of Commercial Speech**

"[D]ifferent types of commercial speech merit different levels of protection."  *Public Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 218 (5th Cir. 2011).  "Inherently misleading or false advertising is not considered commercial speech, and may be regulated by

the state at will." *Borgner v. Brooks*, 284 F.3d 1204, 1210 (11th Cir. 2002) ("Since the First

Amendment is concerned only with the informational function of advertising, state regulations of

commercial messages that do not accurately inform the public about lawful activity are valid.");

*see In re R. M. J.*, 455 U.S. 191, 203-04 (1982) ("[W]hen the particular content or method of the

advertising suggests that it is inherently misleading or when experience has proved that in fact

such advertising is subject to abuse . . . [it] may be prohibited entirely."); *Zauderer*, 471 U.S. at

638 ("The States and the Federal Government are free to prevent the dissemination of

commercial speech that is false, deceptive, or misleading, or that proposes an illegal

transaction."); *Public Citizen*, 632 F.3d at 218 (inherently misleading advertising or advertising

deceptive-in-fact "receives no protection and the State may prohibit it entirely").

"Commercial speech that is not false or deceptive and does not concern unlawful

activities, however, may be restricted only in the service of a substantial governmental interest,

and only through means that directly advance that interest." *Zauderer*, 471 U.S. at 638. "[T]he

'intermediate scrutiny' standard governing the regulation of non-deceptive commercial speech

set forth in *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Commn. of N.Y.*, 447 U.S. 557, 564

(1980) ask[s] whether an imposition on commercial speech (1) promotes a substantial

governmental interest; (2) directly advances the interest asserted; and (3) is not more extensive

than necessary to serve that interest." *Harrell*, 608 F.3d at 1269; *see Went For It*, 515 U.S. at

623 ("we engage in 'intermediate' scrutiny of restrictions on commercial speech, analyzing them

under the framework set forth in *Central Hudson*); *Public Citizen*, 632 F.3d at 218 (*Central

Hudson* standard applies to advertising that is "potentially misleading").

Here, neither party disputes that attorney advertisements containing past results

statements are at most potentially, and not necessarily, deceptive or misleading. Rule 4-7.13 on

its own terms restricts only "deceptive or inherently misleading advertisements," implying that any advertisements which it in fact prohibits are "inherently misleading."  But the Guidelines do not apply to all forms of attorney advertisement – they apply only to advertisements on indoor and outdoor display, television and radio media.  Moreover, the Guidelines clarify that they target past results advertising because the "inclusion of past results in advertising carries a particularly *high risk* of being misleading" (emphasis added).  The Bar has further specified that its application of the Guidelines was directed by a "concern[] that advertisements such as the aforesaid *might be misleading* to the average consumer" (emphasis added). Second Tarbert Decl. ¶ 4.  The Bar itself thus characterizes the subject advertisements as likely or potentially, but not inherently or actually, misleading.  The Court further notes that the Bar has conceded that it must meet the burden delineated in *Central Hudson* "before imposing regulations on attorney advertising."  Resp. at 2.  Finally, the Court considers it relevant that, as represented by Plaintiffs and not disputed by the Bar, no other state bar or attorney regulatory body currently imposes a blanket prohibition on attorney advertising using past results, or a blanket prohibition on such advertisement in any particular media.

The record here is in accord with a recent Fifth Circuit decision that is directly on point.  In *Public Citizen*, 632 F.3d 212, the plaintiffs challenged a rule prohibiting attorney communications containing a reference to past successes or results.  *Id*. at 217.  The specific rule in *Public Citizen* "prohibit[ed] communications that contain a reference or testimonial to past successes or results obtained" except when provided upon client request.  *Id*.  The Louisiana Attorney Disciplinary Board argued that "[r]eference to past results, even if truthful . . . could also be inherently misleading."  *Public Citizen, Inc. v. La. Attorney Disciplinary Bd.*, 642 F. Supp. 2d 539, 553 (E.D. La. 2009).  The circuit court confirmed the district court's determination

that "it is possible for an attorney to present past results in a manner that is not misleading." *Public Citizen*, 632 F.3d at 219. The court contrasted attorney advertisements that reference past result with advertisements that promise results: "a promise that a party will prevail in a future case is necessarily false and deceptive [because n]o attorney can guarantee future results." *Id*. at 218-19. The Fifth Circuit held that attorney advertisements containing reference to past successes or results – the same communication at issue here – "may be presented in a non-deceptive manner and [is] not inherently likely to deceive the public" and, therefore, requires application of the *Central Hudson* test. *Id*. at 219.

Based on the undisputed record and strongly persuasive precedent, the Court will review Plaintiff's First Amendment challenge to the Guidelines under the *Central Hudson* standard.

### D.    Application of *Central Hudson* Standard to Plaintiffs' Claim

#### 1.    Character of the Guideline's Restriction on Attorney Advertising

The Bar argues that Plaintiffs' claim is either misplaced or mistimed and "based on the erroneous premise that the Bar has prohibited advertising of past results on television. The Bar has not." Resp. at 3. The Bar highlights that the Rules on their face do not prohibit Plaintiffs' advertisements and maintains that the Guidelines are advisory and do not themselves establish rules permitting or prohibiting any attorney conduct. In support of their position, the Bar states in opposition to Plaintiffs' recitation of material facts that the "Guidelines adopted by the Bar Board of Governors do not prohibit advertising of past results on television, radio, or any other media" and that the Bar "did not notify Rubenstein that he would face the risk of professional discipline for failing to comply with the [Withdrawal Letter] of Guidelines." ECF No. [33] (Def. Stat. Facts) ¶¶ 1, 2. The Bar's statements of fact claim support by and cite only to the two Tarbert Declarations and the Withdrawal Letter.

The Bar's statements of fact on this issue are directly contradicted by the record evidence before the Court.  To be clear, the Court need not weigh evidence (as would be inappropriate on summary judgment) to reject the Bar's statements of fact.  To be considered, the Bar's statements of fact must be supported by record evidence.  *See Broadcast Music*, --- F.3d ---, 2014 WL 6602418 at \*3; *Reese*, 527 F.3d at 1268-69.  As explained in more detail below, the Bar's statements that the Guidelines "do not prohibit advertising of past results" and that they "did not notify Rubenstein that he would face the risk of professional discipline" are directly contradicted by record evidence (including the Guidelines themselves and the evidence of the Bar's enforcement of the Rules against Plaintiffs), and are not supported even by the evidence to which the Bar cites (the Withdrawal Letter and the two Tarbert Declarations).  The Bar has not identified any genuine dispute of fact material to the substance of Plaintiffs' First Amendment claim.

As addressed (in a different procedural posture) in the Court's previous opinion and order on the justiciability of Plaintiffs' claim, the record clearly establishes that the Guidelines are the Bar's interpretation and application of its Rules regarding attorney advertisement of past results.  Plaintiffs' claim targets the Rules regarding attorney advertisement *as articulated* in the Guidelines.   The Rules permit attorney advertisement of past results where "objectively verifiable."  But the Guidelines establish that advertisements utilizing past results on specific media – including billboards and television – present too high a risk of being misleading, and as a result, the Bar considers all such advertisement non-complaint with its Rules on attorney advertising.

The Guidelines, on their face, purport to interpret and apply the Rules.  The Guidelines were issued by the Bar's Board of Governors, which has exclusive authority to formulate and

adopt matters of policy for the entirety of the Bar's operations.  The Bar's practice in enforcing the Rules through the lens of the Guidelines confirms that the Guidelines are the Bar's official interpretation of the Rules.  The Withdrawal Letter states that Plaintiffs' "advertisement(s) do not comply with the new past results guidelines adopted by The Florida Bar Board of Governors *and therefore* do not comply with Rule 4-7.13(b)(2)" (emphasis added).  Thus, The Bar interpreted the Rules *in accordance with the Guidelines* to determine that Plaintiffs speech was non-compliant.  In fact, the Withdrawal Letter stresses that its revised opinion as to Plaintiffs' advertisements results from the newly issued Guidelines.

Dissemination of advertisements not in compliance with the Rules will subject an attorney – and has subjected Plaintiffs – to disciplinary action by the Bar.  The Rules themselves state that that "[a] lawyer will be subject to discipline as provided in these rules for . . . dissemination of a noncompliant advertisement in the absence of a finding of compliance by The Florida Bar."  Rule 4-7.19(f)(2).  On their face, the Rules themselves appear to mandate disciplinary action for use of an advertisement not found by the Bar to be Rule-compliant. Again, the Bar's practice bears this out.  In the June 2014 Letter, the Bar notified Plaintiffs that they were alleged to have violated the Rules regarding attorney advertisement – specifying the same advertisement language identified in the Withdrawal Letter, and pairing that language with violation of the Rules regarding advertising past results.  The Letter stated that the matter had been referred to Bar counsel "to initiate disciplinary proceedings."  The June 2014 Letter concretely establishes that the Bar's Lawyer Regulation Department has applied the Rules as interpreted by the Guidelines to prohibit attorney advertisement of past results as practiced by Plaintiffs, and engages in disciplinary action to enforce that prohibition.

The Bar's declaration that its Lawyer Regulation Department has not (since adoption of the new Rules) itself submitted an attorney grievance complaint targeting the use of past performance in advertising is misleading and belied by the very disciplinary actions taken by the Bar against Plaintiffs here.  The Bar initiated disciplinary proceedings against Plaintiffs in June 2014 for violating the Rules regarding advertising past results on the basis of an anonymous complaint by "concerned bar members."  *See* June 2014 Letter at 7.  Submission of a complaint by the Lawyer Regulation Department was and is not necessary.  The Bar undertook to enforce the Rules – against Plaintiffs themselves – as interpreted by the Guidelines.

Neither Tarbert Declaration supports the Bar's assertion that it has not prohibited attorney advertising of past results on indoor and outdoor display, television and radio media.  Rather, they recite that the Bar's Ethics and Advertising Department has no independent disciplinary authority, and that the Bar has ceased to issue safe harbor opinions "regarding past results involving dollar recoveries" due to its "concern" that advertisements containing such information "might be misleading to the average consumer."  That is irrelevant to the fact that the Bar has enforced the Rules as restated by the Guidelines to completely prohibit the use of past results in attorney advertisement on indoor and outdoor display, television and radio media.  The Bar's disciplinary arm has enforced the Guidelines.  The fact that the Bar no longer issues safe harbor opinions, similar to the one withdrawn as to Plaintiffs, reinforces the prohibition.  The record evidence establishes that the Bar has banned the use of past results on the specified media and has subjected Plaintiffs to disciplinary repercussions for violating the Guidelines.[5]

The Guidelines express the Bar's position that attorney advertisement containing reference to past results on indoor and outdoor display, television and radio media is completely

---

[5] Even if the Bar's declarations supported their assertions, and they do not, they would not be credited in flatly contradicting clear evidence in the record.  *Reid*, 486 F. App'x at 851.

prohibited.  Plaintiffs challenge only that narrow and specific blanket prohibition.  Although the Rules on their face permit the use of "objectively verifiable" past results, the Bar has interpreted and enforced the Rules, as stated in the Guidelines, to prohibit all reference in attorney advertisement to past results on indoor and outdoor display, television and radio media.  That is the restriction subject to Plaintiffs' First Amendment claim.

### 2.      Substantial Governmental Interests Are Present

The first prong of the *Central Hudson* test requires the Bar to offer a substantial governmental interest that is advanced by the challenged restrictions on speech.  *See Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002) ("If the speech concerns lawful activity and is not misleading . . . we next ask whether the asserted governmental interest is substantial.").  "Unlike rational basis review, the *Central Hudson* standard does not permit [the court] to supplant the precise interests put forward by the State with other suppositions."  *Harrell*, 608 F.3d at 1269 (quoting *Went For It*, 515 U.S. at 624).

Because it chose not to substantively brief the First Amendment issue, the Bar did not articulate which interest or interests the Rules support and promote.  If there is no substantial or important governmental interest at play – and, as explained in *Harrell*, the Court cannot invent one – the analysis ends there.  *See also Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 183 (1999) ("[T]he Government bears the burden of identifying a substantial interest and justifying the challenged restriction.").  Judgment in favor of Plaintiffs would be mandated on this basis alone.  *See*, *e.g.*, *Tinsley Media, LLC v. Pickens Cnty., Ga.*, 203 F. App'x 268, 273-74 (11th Cir. 2006) (holding that ordinance failed *Central Hudson* test where government failed to establish that it was enacted to implement a substantial governmental interest, and refusing to consider "after the fact rationalizations for regulations" in its analysis).

However, the undisputed record evidence reveals several discrete interests the Bar understood the Rules and Guidelines to advance.  In its 2011 Petition advocating adoption of the Rules, the Bar stated several "primary goals," including:  protecting the public from "false, misleading, or deceptive information by lawyers for the purpose of obtaining representation;" promoting attorney advertising that "provides information that will assist a prospective client in making an informed and meaningful decision" about legal services; and preventing "advertising that contributes to disrespect for the judicial system" or that "causes the public to have an inaccurate view of the legal system."  The Guidelines reiterate the purpose of preventing misleading attorney advertising.  The Supreme Court and the Eleventh Circuit have recognized as substantial the government's interests in "ensuring the accuracy of commercial information in the marketplace," *Edenfield*, 507 U.S. 769-70, and in preserving the integrity and reputation of the legal profession and through that  promoting the administration of justice.  *Harrell*, 608 F.3d at 1269-70 (citing *Went For It*, 515 U.S. at 625); *see also Mason*, 208 F.3d at 956 ("[T]he Supreme Court confirmed long ago that the state has both a general interest in protecting consumers, as well as a special responsibility to regulate lawyers.").  "By contrast, an interest in preserving attorneys' dignity in their communication with the public is not substantial." *Public Citizen*, 632 F.3d at 220 (citing *Zauderer*, 471 U.S. at 647-48 ("[T]he mere possibility that some members of the population might find advertising embarrassing or offensive cannot justify suppressing it.")).  Therefore, the Court addresses the three substantial governmental interests that the Bar promulgated the Rules and the Guidelines to promote:  to protect the public from misleading or deceptive attorney advertising; to promote attorney advertising that is positively informative to potential clients; and to prevent attorney advertising that contributes to disrespect for the legal system and thereby degrades the administration of justice.

### 3.   The Bar Has Failed to Demonstrate That Its Restrictions Advance the Interests at Issue

"This portion of the test requires the government to 'demonstrate that the challenged regulation advances the Government's interest in a direct and material way.'" *Borgner*, 284 F.3d at 1211 (quoting *Went For It*, 515 U.S. at 625). That burden "is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995). "A state cannot satisfy its burden to demonstrate that the harms it recites are real and that its restrictions will alleviate the identified harm by rote invocation of the words 'potentially misleading.'" *Mason*, 208 F.3d at 956. "Courts have generally required the state to present tangible evidence that the commercial speech in question is misleading and harmful to consumers before they will find that restrictions on such speech satisfy [this] prong." *Borgner*, 284 F.3d at 1211; *see also Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation,* 512 U.S. 136, 147 (1994) (striking down a state regulation for failure to back up the concern that the speech would mislead rather than inform); *Peel v. Attorney Registration & Disciplinary Comm'n of Ill.,* 496 U.S. 91, 108-09 (1990) (rejecting the claim that certain speech was misleading for lack of empirical evidence); *Edenfield*, 507 U.S. at 770-71 (rejecting the state's asserted harm because the state had presented no studies, nor anecdotal evidence to support its position).

The Bar has presented no evidence to demonstrate that the restrictions it has imposed on the use of past results in attorney advertisement support the interests its Rules were designed to promote. The burden here is the Bar's, and it has failed to meet it.

Rather than proving that its rules on the use of past results are necessary to protect consumers, the record evidence accumulated by the Bar actually undermines its position. The

data collected between 1995 and 1997 toward the 1997 Task Force Report – to the extent probative – showed that consumers wanted more "useful" and "factual" information to help them chose an attorney.  The supporting survey results explain that large majorities of consumers were interested in attorney "qualifications," "experience," "competence" and "professional record" (i.e., wins/losses)."  They also revealed that negative attitudes about legal system and lawyers consistently declined over the relevant survey period, despite the increase in quantity and breadth of attorney advertising.[6]   Nonetheless, in 1997, the Bar recommended a complete ban on references to past successes or results in attorney advertising in indoor or outdoor display, television and radio media.  It did so based on what amounts to two blanket assertions:  that the use of past results is misleading to the untrained public (e.g., a lay person "might be misled into believing that the results obtained in the advertised cases indicate that the same results would be obtained in his or her case" and "is not in a position to judge the significance of a particular result"); and that past results are essentially not informative, i.e., that "past results are not valid indicators of an attorney's competence or fitness to handle a particular matter."  Neither then nor now has the Bar provided any evidence supporting these claims.

More poignant, in advocating permitting the use of past results in attorney advertising as part of the revised Rules, the Bar stated that "[o]f those responding to the survey on public perception of lawyer advertising, 74% indicate that past results are an important attribute in choosing a lawyer[; i]t is clear that the public wants this information available to them;" and that "[m]ost of those Florida Bar members who provided written and oral comments also noted that

---

[6] As examples, the number of people who strongly agreed that lawyer advertisements "play more on people's emotions and feelings than on logic and thoughtfulness" was down from 56% to 43%; the number of people who felt that attorney advertisements "encouraged people with little or no injury to take legal action" was down from 55% to 35%, and those who thought advertisements increased the propensity to engage in frivolous lawsuits was down from 55% to 35%; those who believed that attorney advertisements were at least somewhat truthful and honest increased from 51% to 69%; and those who strongly agreed that attorney advertisements lessened then respect for the fairness and integrity of the legal process was cut nearly in half, from 32% to 17%. 1997 Task Force Survey Results and Executive Summary (Phase II) at 9-10.

the lawyer advertising rules should not prohibit truthful statements regarding past results."  The Bar further explained that "there is no reason why any communications seeking legal employment should be treated differently based upon the medium of the advertising or whether the person requested the information."  Like its 1997 Task Force, the 2011 Petition was supported by data and deliberation.

In contrast, the Bar included no factual support for its course-reversal in the Guidelines. The Guidelines claim that "[t]he inclusion of past results in advertising carries a particularly high risk of being misleading" and that "[i]ndoor and outdoor display and radio and television media do not lend themselves to effective communication" of information necessary to ensure that the use of past results are not misleading.  In the absence of evidence – especially in light of the fact that the Bar continues to permit the widespread use of past results in other advertising media – this amounts to mere conjecture and speculation.

The Bar has submitted a single declaration from its Director of Ethics and Attorney Advertising relevant to this analysis, stating that the Bar "bec[a]me concerned that advertisements . . . that contained statements that lawyers or law firms had gotten clients recoveries in large dollar amounts . . . might be misleading to the average consumer."  Whatever the merits of the Bar's "concern," this alone is woefully insufficient to support its restriction on Plaintiffs' commercial speech.  The Bar offers that it has engaged a third party to conduct consumer research into the use of certain past results information in attorney advertising.  The Bar's interest in supporting its position with actual evidence does too little, too late.  The data and results of this possible survey, even if they could justify the Guidelines in their entirety, are not properly before this Court.  The Bar never requested additional time for discovery.  It has not asked the Court to delay consideration of the instant Motion after the Court rejected its

justiciability arguments.  Plaintiffs are not, as the Bar suggests, "asking the Court to adjudicate the case before the evidence is in."  Resp. at 5.  The Bar bears the burden here.  They have failed to carry it.  *See Mason*, 208 F.3d at 958 (holding that Florida Bar failed to satisfy this prong of the *Central Hudson* test due to "glaring omissions in the record of identifiable harm" addressed by the subject restrictions on attorney speech).

Finally, the Court reiterates that the Fifth Circuit, in *Public Citizen*, recently held unconstitutional a Louisiana prohibition on past results attorney advertising materially identical to the rule at issue here.  Similar to the Bar's interests in protecting the public from misleading advertising and promoting informative attorney advertising, the Louisiana Attorney Disciplinary Board argued that "the prohibited speech has the potential for fostering unrealistic expectations in consumers."  *Public Citizen*, 632 F.3d at 222.  The court rejected that argument, and explained:

> It is well established that the inclusion of verifiable facts in attorney advertisements is protected by the First Amendment [which] . . . does not tolerate speech restrictions that are based only on a "fear that people would make bad decisions if given truthful information."  *W. States Med. Ctr.*, 535 U.S. at 359.  "It is precisely this kind of choice, between the dangers of suppressing information, and the dangers of its misuse if it is freely available, that the First Amendment makes for us."  *Va. Bd. of Pharmacy*, 425 U.S. at 770; *see also Bates*, 433 U.S. at 374-75 (rejecting arguments that "the public is not sophisticated enough to realize the limitations of advertising, and that the public is better kept in ignorance than trusted with correct but incomplete information").

*Public Citizen*, 632 F.3d at 221-22.  *Public Citizen* reinforces that the Bar – had it attempted to prove that the Guidelines advance substantial governmental interests – would need to do so without resorting to the naked paternalism of protecting the public from truthful information.  *See 44 Liquormart,* 517 U.S. at 497 ("[A] State's paternalistic assumption that the public will use truthful, nonmisleading commercial information unwisely cannot justify a decision to suppress it."); *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 792 (1978) ("The First Amendment

rejects the highly paternalistic approach of statutes . . . which restrict what the people may hear.") (citations omitted); *Va. Bd. of Pharmacy*, 425 U.S. at 770 (deprecating as "highly paternalistic" a state law that, in violation of the First Amendment, sought to protect consumers by prohibiting truthful advertising).

The Bar has failed to demonstrate that its restrictions advance the governmental interests at play.  For that reason alone, the Rules regarding the use of past results in attorney advertising as interpreted by the Guidelines are unconstitutional.  The Court notes, however, that "[i]nvalidating a regulation of commercial speech for lack of sufficient evidence under this prong of *Central Hudson* does not foreclose a similar regulation being enacted validly in the future. Rather, such invalidation returns the matter to the applicable legislating body and forces that body to take a 'second look' with the eyes of the people on it."  *Alexander v. Cahill*, 598 F.3d 79, 91-92 (2d Cir. 2010) (citations omitted).

### 4.    The Guidelines Are Not Properly Tailored

The Bar has additionally failed to demonstrate that its subject restrictions on attorney speech are no broader than necessary to serve the interests they purport to advance.  The final prong of *Central Hudson* "requires that there be an adequate 'fit between the legislature's ends and the means chosen to accomplish those ends, a fit that is not necessarily perfect, but reasonable." *Harrell*, 608 F.3d at 1270-71 (quoting *Went For It*, 515 U.S. at 632).  A restriction on commercial speech must not be "broader than reasonably necessary to prevent the deception." *R. M. J.*, 455 U.S. at 203; *see Central Hudson*, 447 U.S. at 566 (regulation may not be "more extensive than is necessary to serve that [substantial] interest").  Even when the state interest is substantial and is directly advanced by the targeted regulation, "[i]f the Government can achieve its interests in a manner that does not restrict commercial speech, or that restricts less speech, the Government must do so."  *W. States Med. Ctr.*, 535 U.S. at 358.

The Guidelines amount to a blanket restriction on the use of past results in attorney advertising on indoor and outdoor display, television and radio media.   The Bar has not demonstrated that the prohibition's breadth was necessary to achieve the interest advanced, or that lesser restrictions – e.g., including a disclaimer, or required language – would not have been sufficient.   The Bar has failed to meet its burden under this prong as well.

## V.   SCOPE OF RELIEF

Plaintiffs seek to declare unconstitutional and enjoin the enforcement of the Guidelines' blanket prohibition on attorney advertisement of past results in indoor and outdoor display, television and radio media.   This amounts to quasi-facial relief beyond application of the Guidelines to Plaintiffs' particular circumstances.   As discussed above, the Court must ensure that, to the extent the relief requested reaches beyond Plaintiffs in this particular case, Plaintiffs have satisfied *Salerno*'s "no set of circumstances" test.   *See Scott*, 717 F.3d at 863.

### A.      Standard for Injunctive Relief

As part of its "long-recognized, inherent equitable powers," a federal court may issue "traditional" injunctive relief "as either an interim or permanent remedy for certain breaches of common law, statutory, or constitutional rights."   *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004).   "A district court may grant [preliminary] injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest."   *Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam).   The standard for issuing a permanent injunction is identical, except that the plaintiff must show actual success on the merits instead of a likelihood of success, and most courts do not consider the public interest element in deciding

whether to issue a permanent injunction. *See Amoco Prod. Co. v. Vill. of Gambell, Ark.*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."); *Klay*, 376 F.3d at 1098.  "[E]ven if his common law, statutory, or constitutional rights have been violated, the plaintiff must also meet the other requirements for obtaining an injunction to show that an injunction is the proper remedy for such violation."  *Klay*, 376 F.3d at 1098.

Those requirements are clearly evident here.  First, the Court has concluded that Plaintiffs have succeeded on the merits of their First Amendment challenge.  "The Supreme Court has held that any loss of First Amendment freedoms, even for a brief amount of time, is sufficient to constitute the irreparable injury necessary to justify the issuance of a[n] injunction."  *Univ. Books & Videos, Inc. v. Metro. Dade Cnty.*, 33 F. Supp. 2d 1364, 1373 (S.D. Fla. 1999) (citing *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *Ne. Fla. Chapter of Assoc. of Gen. Contractors of Amer. v. City of Jacksonville, Fla.,* 896 F.2d 1283, 1285 (11th Cir. 1990)).  Because the Bar has not demonstrated that the Guidelines advance any substantial governmental interest, the balance of injuries must weight in favor of Plaintiffs.  Finally, the public interest always is served when constitutional rights, especially those involving free speech, are vindicated.  *See*, *e.g.*, *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012) ("The vindication of constitutional rights and the enforcement of a federal statute serve the public interest almost by definition."); *A Choice For Women v. Butterworth*, 2000 WL 34402611, at *13 (S.D. Fla. June 2, 2000) ("the public interest is well served when the Court protects the constitutional rights of the public"); *White v. Baker*, 696 F. Supp. 2d 1289, 1313 (N.D. Ga. 2010) ("[B]ecause a constitutional right is at issue, the entry of an injunction would not be adverse to

the public interest but would in fact advance it."); *Show World, Inc. v. City of Hollywood*, 1997 WL 33446700, at *3 (S.D. Fla. Feb. 4, 1997) (granting preliminary injunction in First Amendment context).

> **B.** **Exception to *Salerno* in First Amendment Overbreadth Context**

While Plaintiffs have not raised an overbreadth challenge, the Supreme Court and Eleventh Circuit's guidance on the less demanding standard in that context informs the Court's analysis here. "[T]he Supreme Court itself in *Salerno* acknowledged an exception to the 'unconstitutional-in-every-conceivable-application' rule in cases involving the overbreadth doctrine in 'the limited context of the First Amendment.'" *Horton v. City of St. Augustine, Fla.*, 272 F.3d 1318, 1331 (11th Cir. 2001) (quoting *Salerno*, 481 U.S. at 745). "[T]he Supreme Court and [the Eleventh Circuit] consistently have permitted facial challenges to prior restraints on speech without requiring the plaintiff to show that there are no conceivable set of facts where the application of the particular government regulation might or would be constitutional." *United States v. Frandsen*, 212 F.3d 1231, 1236 (11th Cir. 2000). "An overbreadth challenge does not require a showing that there is no set of circumstances in which the statute could be applied constitutionally, but it does require a showing that a substantial number of a statute's applications are unconstitutional, judged in relation to its plainly legitimate sweep." *United States v. Martinez*, 736 F.3d 981, 991 (11th Cir. 2013) (quotations omitted). "The reason for this exception lies in the fact that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Horton*, 272 F.3d at 1331.

Plaintiffs seek declaratory and injunctive relief on First Amendment grounds, but pose that relief in terms broader than their particular context. The same rationale which guides an overbreadth challenge analysis – hostility to broadly written laws that may chill properly

unrestrained communication – applies here.  Certainly, the Court cannot impose facial relief beyond what can be supported by the factual record in a particular case.  *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) ("Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.").  But the imperatives of the First Amendment's protections on free speech require the Court to consider the implication of its ruling in the instant action on others not present before it.  Refusing here to address all but the narrowest scope of relief (i.e., only as to the specific advertisements currently disseminated by Plaintiffs) would leave both Plaintiffs, in as much as they may seek to create and disseminate additional advertisements referencing past results, and all others subject to the Bar's authority and the Rules' purview without any clarity as to the Guidelines' constitutional validity and enforceability.  That would have the effect of chilling speech properly protected by the First Amendment.  Balancing those two extremes, the Court will focus its relief on all attorneys subject to the precise regulation targeted by Plaintiffs here: the complete prohibition on attorney advertising referencing past results in indoor and outdoor display, television and radio media.

### C.    Applicable Precedent on Scope of Relief

The Court's approach here comports with the approach taken by other courts in crafting relief in the First Amendment context, including when considering the constitutionality of restrictions on commercial speech by attorneys.

In *Alexander v. Cahill*, 598 F.3d 79 (2d Cir. 2010), attorneys challenged new rules prohibiting certain types of advertising adopted by the New York Supreme Court, Appellate

Division.  Fearful that some of their advertising techniques violated the new rules, the plaintiffs stopped running them, and then sued on First Amendment grounds.  The Second Circuit affirmed the district court's grant of summary judgment to the plaintiffs with respect to the content-based attorney advertising restrictions, and confirmed the declaratory and injunctive relief the district court imposed.  As appropriate for an as-applied challenge, both the lower and appellate court placed the burden on the state to justify its restriction on commercial speech.  *Id*. at 90.  While the plaintiffs directed their First Amendment claim at the restrictive effect of the new rules on their advertising, the district court issued, and the Second Circuit affirmed, broader declaratory and injunctive relief, declaring unconstitutional and completely enjoining enforcement against any attorney of the offending regulations.  *See Alexander v. Cahill*, 634 F. Supp. 2d 239, 257 (N.D.N.Y. 2007).

Likewise, in *Revo v. Disciplinary Bd. of the Sup. Ct. for the St. of N.M.*, 106 F.3d 929 (10th Cir. 1997), the Tenth Circuit affirmed the district court's issuance of permanent injunctive relief to remedy a First Amendment violation of attorney commercial speech.  The plaintiff in *Revo* sought a declaratory judgment that the New Mexico Disciplinary Board's ban on attorney direct mail advertisements to personal injury victims and family members of wrongful death victims was unconstitutional, as applied to him and the solicitation letter he proposed to send.  *Id*. at 930-31.  After a bench trial, the district court determined that the blanket ban on direct mail advertising was insufficiently tailored to serve the Board's interests and violated the plaintiff's First Amendment rights.   The court permanently enjoined the Board from enforcing the regulation.  The Tenth Circuit, in affirming the regulation's unenforceability, cited *Board of Trustees, State Univ. of N.Y. v. Fox*, 492 U.S. 469, 483 (1989), for the proposition that "although [an] as applied holding on commercial speech restriction does not assure a defense to all others

34

whose own commercial solicitation may be constitutionally proscribed, [the] rationale of [that] holding may be so broad as to render [the] statute effectively unenforceable." *Revo*, 106 F.3d at 936.

The Fifth Circuit's decision in *Public Citizen*, 632 F.3d 212 (5th Cir. 2011), was similar in scope. As explained above, *Public Citizen* addressed newly adopted regulations on attorney communication, including, as here, a ban on the use of past results. The circuit court reversed the district court's summary judgment that certain of those rules did not constitute unconstitutional infringement on the commercial speech of Louisiana lawyers. In reversing, the Fifth Circuit placed the burden of upholding the regulations on the Louisiana Attorney Disciplinary Board, and determined that the rules which failed to meet the *Central Hudson* standard were unconstitutional in their entirety.

In a posture similar to *Public Citizen*, the Eleventh Circuit, in *Mason*, 208 F.3d 952 (11th Cir. 2000), reversed the district court's determination after a non-jury trial that the attorney advertising regulations at issue passed First Amendment scrutiny. There, the plaintiff argued that, as applied to him, the Florida Bar's restriction on advertising containing attorney ratings violated his First Amendment right of free speech. *See id.* at 954; *Mason v. Fla. Bar*, 29 F. Supp. 2d 1329, 1330 (M.D. Fla. 1998). Placing the burden on the Bar "to demonstrate that the harms it recites are real and that its restrictions will alleviate the identified harm" and applying the *Central Hudson* test, the appellate court in *Mason* found the regulations unconstitutional. *Mason*, 208 F.3d at 957-58. The court did not qualify its holding to the plaintiff himself.[7] *Id.* at 959.

Courts have routinely followed this same pattern in adjudicating First Amendment issues other than the regulation of attorney communication. *See, e.g.*, *AIDS Action Comm. of Mass.*,

---

[7] Consistent with that, the district court issued a subsequent order that it would enforce, via declaratory and injunctive relief, the Eleventh Circuit's ruling on the regulation's unconstitutionality if the Bar took any action in the future adverse to the ruling. *See Mason v. Fla. Bar*, Case No. 97-01493 ECF No. [41] (Jun. 7, 2000).

*Inc. v. Mass. Bay Transp. Auth.*, 42 F.3d 1, 12 (1st Cir. 1994) (affirming injunction with respect to advertisements in question as well as "any that are strictly comparable," in context of as-applied First Amendment challenge); *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 583 (6th Cir. 2012) (affirming permanent injunction against enforcement of city ordinance imposing solicitation curfew where plaintiff presented, and court only considered, an as-applied First Amendment claim); *Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1238 (10th Cir. 2005) (affirming, in context of an as-applied First Amendment challenge, preliminary injunction completely enjoining enforcement of city ordinance establishing a solicitors licensing procedure which included fingerprinting and bond requirements).

### D.      Proper Scope of Relief Here

Plaintiffs' requested declaratory and injunctive relief is appropriate even under *Salerno*'s rigorous requirements, especially when read in light of the "substantial application" standard in the First Amendment overbreadth context.

Given the evidence before the Court, there is no attorney subject to the Rules as to whom the Guidelines' blanket prohibition on advertising using of past results in indoor and outdoor display, television and radio media could survive scrutiny under the *Central Hudson* standard. *See Scott*, 717 F.3d at 866 (application of *Salerno* in relief context requires that the offending statute or regulation be unconstitutional to the complete extent of the relief granted).  The Bar can regulate attorney advertising.  But, so long as it has not proven that its complete ban on advertising referring to past results in the specified media supports a substantial governmental interest, it is not justified in doing so as articulated in the Guidelines.  The Bar may in the future seek to reconstitute the Guidelines by addressing and meeting its evidentiary burden, or may seek to introduce some sufficiently tailored variation of the Guidelines.  As the Court noted

above, "[i]nvalidating a regulation of commercial speech for lack of sufficient evidence under this prong of *Central Hudson* does not foreclose a similar regulation being enacted validly in the future." *Alexander*, 598 F.3d at 91-92.  But, that does not prevent the Court from issuing the requested declaratory and injunctive relief here and now.

## VI.   CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of Plaintiffs. There are no factual issues in dispute regarding the Bar's blanket prohibition on the use of past results in attorney advertising on indoor and outdoor display, television and radio media.  The Bar has failed to demonstrate that the Rules regarding the use of past results in attorney advertising as interpreted by the Guidelines advance a substantial governmental interest, or that the those restrictions are not more extensive than necessary to serve that interest.  The relief requested by Plaintiffs, as circumscribed and on the terms stated herein, is appropriate.

Accordingly, it is hereby **ORDERED and ADJUDGED** that

1.    Plaintiffs' Motion for Summary Judgment, ECF No. [28] is **GRANTED**.

2.    The Guidelines' interpretation of the Rules to completely prohibit the use of past results in attorney advertising in indoor and outdoor display, television and radio media, contained in the section of the Guidelines titled "Unacceptable Media", is **UNCONSTITUTIONAL** in violation of the First Amendment to the United States Constitution.

3.    The Bar is **ENJOINED** from enforcing Rules 4-7.13 and 4-7.14 as restated in the Guidelines to completely prohibit all reference to past results in attorney advertising in indoor and outdoor display, television and radio media.

4.    Within **fourteen (14) days** of this Order, Plaintiffs shall submit a memorandum of law and supporting documentation justifying their requested award of reasonable costs, expenses and attorney's fees under 42 U.S.C. § 1988.   The Bar may reply within **fourteen (14) days** of

receipt.

5.     Any pending motions are denied as **MOOT** and all upcoming deadlines are **TERMINATED**.

      **DONE and ORDERED** in Fort Lauderdale, Florida, this 8th day of December, 2014.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record